UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SIN SANTO BAD,

        Plaintiff,

v.

TOM ROY - Commissioner,
MICHELLE SMITH - Warden, and
MICHAEL PARKS - Discipline Lt.,

        Defendants.

Civil No. 12-2886 (DWF/JJK)

**REPORT AND RECOMMENDATION**

    Plaintiff, a Minnesota state prison inmate, commenced this action by filing a pleading entitled "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983." (Docket No. 1.) Plaintiff did not pay the $350 filing fee required for this action, (see 28 U.S.C. § 1914(a)), but he instead applied for leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) By order dated November 19, 2012, (Docket No. 4), Plaintiff was advised that his IFP application would not be addressed, and his case would not go forward, until after he paid an initial partial filing fee of at least $4.49, as required by 28 U.S.C. § 1915(b)(1).

    Plaintiff has paid his initial partial filing fee, (the Clerk's docket sheet shows that he actually paid $4.99, [Docket No. 5]), so his complaint is now ripe for initial screening pursuant to 28 U.S.C. § 1915A. The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff's complaint fails to state a cause of action on which relief can be granted. The Court will therefore recommend that this action be

summarily dismissed pursuant to 28 U.S.C. § 1915A(b).

**I. BACKGROUND**

Plaintiff is an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota, ("MCF-Stillwater"). In May or June of 2012,[1] three correctional officers allegedly filed disciplinary charges against Plaintiff. (Complaint, p. 2.) He was accused of violating prison regulations involving "Unauthorized Control," "Destruction, Damage," "Smuggling," "Disorderly Conduct," "Possession of Contraband, Alcohol," and "Possession of Contraband, Other." (Id.) A hearing on the disciplinary charges was conducted by another prison official, Defendant Michael Parks. (Id.)

Defendant Parks found Plaintiff guilty of three of the pending disciplinary charges: (1) "Unauthorized Control," (2) "Disorderly Conduct," and (3) "Possession of Contraband." (Id.) As punishment for his offenses, Plaintiff was placed in segregated confinement for twenty days.[2] It appears that Plaintiff's segregated confinement may have caused him to lose some prison privileges, including employment opportunities, visitation opportunities, and access to the prison canteen and prison libraries. (See Plaintiff's "Memorandum of Law," [Docket No. 3], pp. 1-2.) However, nothing in Plaintiff's submissions suggests that his release date has been postponed, or the term of his

---

[1] The timing of the various events described in the complaint is somewhat confusing, because the first event allegedly took place in June 2012, and later events allegedly took place in May 2012. (See Complaint, p. 2.) However, this confusion has no bearing on the ultimate disposition of Plaintiff's claims.

[2] The sanctions imposed on Plaintiff are not described on the face of his complaint, but several exhibits attached to the complaint show that Plaintiff was given twenty days of segregated confinement.

2

incarceration has been extended, as a direct result of the disciplinary proceedings described in his complaint.

Plaintiff is now claiming that he was deprived of his constitutional right to due process during the disciplinary proceedings described in his complaint. He specifically alleges that he was denied due process because (1) he was not allowed to call witnesses to testify at the disciplinary hearing before Defendant Parks, and (2) Defendant Parks did not adequately investigate the disciplinary charges at issue. Plaintiff also alleges that Defendant Parks was biased against him. (Complaint, p. 2.)

Plaintiff claims that Defendant Michelle Smith, the Warden at MCF-Stillwater, is liable for the due process violations allegedly committed by Defendant Parks, by reason of Defendant Smith's alleged "supervisory responsibilities" over Defendant Parks. (Id., p. 4.) It is unclear why Plaintiff is attempting to sue Defendant Tom Roy, who is the Commissioner of the Minnesota Department of Corrections.

Plaintiff is seeking a judgment in this case that would compel the Minnesota Department of Corrections to change its procedures governing disciplinary proceedings, so that inmates facing even "minor" disciplinary charges would have a right to call witnesses. In addition, Plaintiff wants $20,000 to compensate him "for litigating this action." (Id., p. 8.)

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a

prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1).

To state an actionable claim for relief, a plaintiff must allege a set of specific historical facts, which, if proven true, would entitle the plaintiff to some redress against the named defendant(s) under some cognizable legal theory. See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). A complaint fails to state a cause of action if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The facts supporting a plaintiff's claims must be clearly alleged. Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

In this case, Plaintiff is attempting to sue the named Defendants under 42 U.S.C. § 1983 for allegedly violating his federal constitutional rights. Plaintiff contends that he was deprived of his constitutional right to due process during the course of his prison disciplinary proceedings, because (a) he was not allowed to call witnesses to testify at his

4

disciplinary hearing, (b) the disciplinary hearing officer did not adequately investigate the charges, and (c) the disciplinary hearing officer was biased.

To state an actionable § 1983 due process claim, a complainant must allege a set of facts showing that he was deprived of a constitutionally protected interest in life, liberty or property, without being afforded adequate procedural protections. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"); Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) ("'[i]n order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action'") (quoting Phillips v. Norris, 320 F.3d 844, 846 (8th Cir.2003)). Plaintiff obviously believes he has a constitutionally protected liberty interest in remaining in the general prison population, (as opposed to segregated confinement). He believes that he was deprived of that allegedly protected interest, and various related privileges, (visitation, access to libraries and the canteen, etc.), without being afforded due process. Plaintiff also believes he has a constitutionally protected interest in retaining a prison job.

However, in prisoner civil rights cases, a constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when the prisoner has shown the type of unusual hardship, or dramatic departure from ordinary prison life, that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court held that a prisoner has not been deprived of a constitutionally protected liberty interest warranting due process protection, unless he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. See

also <u>Orr</u>, 610 F.3d at 1034 ("[t]o show he was deprived of a protected liberty interest, [a prisoner] must identify conditions that impose 'atypical or significant hardship ... in relation to the ordinary incidents of prison life'") (quoting <u>Sandin</u>, 515 U.S. at 484). In <u>Moorman v. Thalacker</u>, 83 F.3d 970, 972 (8th Cir. 1996), the Court of Appeals interpreted <u>Sandin</u> to mean that prisoner due process rights are implicated only when there have been "deprivations which work such <u>major disruptions</u> in a prisoner's environment and life that they present <u>dramatic departures</u> from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.)

In this case, Plaintiff has not pleaded an actionable due process claim, because he has not alleged any facts showing the kind of atypical prison conditions that <u>Sandin</u> requires. It is well settled that, for due process purposes, assignment to segregated confinement, (and the loss of privileges accorded to inmates in the general prison population), is considered to be a normal part of prison life. Therefore, limited periods of segregated confinement are not considered to be an "atypical and significant hardship" that can give rise to a protected liberty interest. The Eighth Circuit has repeatedly held that "a demotion to segregation, <u>even without cause</u>, is not itself an atypical and significant hardship'" that implicates a protected liberty interest. <u>Orr</u>, 610 F.3d at 1034, quoting <u>Phillips</u>, 320 F.3d at 847 (emphasis added). <u>See</u> also <u>Portley-el v. Brill</u>, 288 F.3d 1063, 1065 (8th Cir. 2002) ("[w]e have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under <u>Sandin</u>"). Because Plaintiff did not suffer an atypical and significant hardship when he was placed in segregated confinement, he was not deprived of a protected liberty interest, and he was

not entitled to the procedural benefits of due process. Therefore, Plaintiff has not pleaded an actionable due process claim based on his segregated confinement.

It is also well settled that prisoners do not have a constitutionally protected liberty interest in having or retaining a prison job. Prisoners are frequently denied employment opportunities for many different reasons, and such deprivations are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997); Dominque v. Weld, 73 F.3d 1156, 1161 (1st Cir. 1996); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995). See also Burton v. Evans, No. 01 C 3328 (N.D.Ill. May 2, 2002) 2002 WL 832590 at *5 ("[a] prisoner's interest in having a job is not protected as a liberty interest by the Due Process Clause"). Thus, Plaintiff did not have a protected liberty interest in retaining his prison job, which means that he was not entitled to due process before being deprived of his job.

In sum, segregated confinement and the loss of a prison job are not considered to be atypical and significant hardships for prisoners. Therefore, according to Sandin, Plaintiff was not deprived of a constitutionally protected liberty interest when he was placed in segregated confinement and lost his prison job. Because Plaintiff was not deprived of any constitutionally protected liberty interest, he was not entitled to due process. Thus, the facts alleged in Plaintiff's complaint do not state an actionable due process claim.

### III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff has failed to

plead a cause of action on which relief can be granted. The Court will therefore recommend that this case be summarily dismissed pursuant to 28 U.S.C. § 1915A(b). Because Plaintiff has not pleaded a viable claim in his complaint, his application for leave to proceed IFP must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $350 filing fee.[3] To date, Plaintiff has paid only $4.99, so he still owes $345.01. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Lastly, because Plaintiff has failed to plead an actionable claim for relief, the Court will recommend that the dismissal of this action be counted as a "strike" against him for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's application for leave to proceed in forma pauperis, (Docket No. 2), be **DENIED**;

---

[3] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

2. This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the sum of $345.01, in accordance with 28 U.S.C. § 1915(b)(2); and

4. The dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

Dated: December 18, 2012

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 2, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.